May it please the Court, Greg Hurley, on behalf of Appellant, City of Riverside. Your Honor, I'd like to start with a little bit of history. At the pretrial conference for this case, the City was told for the first time that the plaintiffs would be allowed to pursue damages for claims up to the date of trial. The City was forced to defend against new damage claims on events that occurred only days before trial after discovery had closed. These were new claims based on different operative facts. Plaintiffs filed one governmental claim before the complaint in 1997 and never amended that governmental tort claim. All the plaintiffs' damages for encounters are after the filing of that tort claim. The City raises three arguments. First, that the Court I'm just having trouble believing that the City was so surprised and wasn't unnoticed. I mean, this is a saga-like view that you see. This has been going on, what, like 10 years or longer? Yes, Your Honor. And, you know, it just seems that Mr. Lomberg's always made it pretty clear in an encompassing sense what he's contesting. So to claim surprise that you had no idea what you were defending seems fairly incredulous. Your Honor, the claims that he eventually recovered damages for were encountered four years after the filing of the complaint and were first raised after discovery had closed. We had knowledge that Mr. Lomberg had issues with the City. Right. And, I mean, the last time, not everyone had the benefit of seeing you all before, but the last time we saw you that he was challenging the transition plan and all of that. And so it's pretty clear that he was basically challenging all the access issues that, you know, I mean, he's made that pretty clear all along. We believe there's a substantial difference between his claims for injunctive relief and his claims for recovery of damages and the requirements of the California Tort Claims Act. There's – the City raises three arguments. First, that the Court erred by finding that the plaintiff's claims were not subject to the California Tort Claims Act, that the Court erred by allowing plaintiffs' supplemental complaints to include post-complaint damages, and that the Court erred by allowing plaintiffs' claims that were barred by the statute of limitations. On the first point, we believe the Court erred in finding claims that were – finding that the claims were not subject to the California governmental tort claims requirement. And we submitted to the Court the Pedroni case, which we believe is very similar to this situation. So what are you suggesting that Mr. Lomberg should have done? Every six months file another claim covering new encounters with various curbs and sidewalks? To the extent he was seeking damages for those, we believe he is obligated to file the governmental tort claims as he encounters them. And he can do that for as long a period as he wants. It allows us time to investigate his claim and to do all of the things that the governmental tort claim was enacted to allow us to do. It's just hard to believe that you weren't on notice that he was challenging every curb or sidewalk in the whole city. Again, Your Honor, for the scope of injunctive relief, his original case actually involved every feature and facility within the city. So it was too large for us to come across with it, and he asked for $35 million in damages. But when the purpose of the tort claim for us is to help us understand the specific encounters, and when those encounters occur after the date of the filing of the complaint. Well, so are you saying that under the Tort Claim Act, what you were put on notice for didn't give you notice that he'd be claiming damages? No. The purpose of the Tort Claim Act is to let us know he'd be claiming damages. So you're not claiming that you didn't know he was claiming damages. We didn't know that he was claiming damages after the date of filing of the Tort Claim Act. The Tort Claim Act relates to the claims within the six months prior. There's some argument in here by the plaintiff that the — and apparently by the district court that the damages were really just incidental to the injunctive relief, and it's really not subject to the California Tort Claims Act. The plaintiff makes that argument, but the record we support is that that wasn't what the court found. What the court found was that the California Tort Claims Act does not apply to statutory damages. That's right. It says it's a statutory claim, not a tort claim. Right. And we believe that's wrong, again, Pedroni. Well, we could affirm the court on any ground that it's properly supported by the record, I suppose. And we contend that there is no support in the record for finding that the claim for damages was incidental. Plaintiffs have not submitted any. They ask them to comply with the court data. But it wasn't really an amendment the way this came about. It wasn't. It was under the Federal rules at the pretrial, right, that it was a pretrial order. That was the way the amendment came about. And so I'm wondering what your best authority is that — for the argument that under the Federal rules, an amendment via a pretrial order does not cause the added claims to relate back to the original pleading. Because that's really what we're — that's how this happened, right? They didn't file an amended complaint. It was a pretrial order that did this and related it back, right? They filed a supplemental complaint. They did not file an amended complaint. We contend that that supplemental complaint, they needed to establish a good cause. They have not done so. The supplemental complaint was filed more than 10 years after the initial complaint. So what did the pretrial order look like? What was it — the pretrial order told you that it was relating back, right? The pretrial order told us that they would be allowed to pursue all claims up to the date of trial without allowing us discovery on the claims after the close of discovery. There's kind of a uniqueness about this case, the fact that it's gone on forever and what, you know, it's not really terribly appealing to think that every six months that we would have new lawsuits on all of that. This has been one judge that's been doing all of this. And, well, not one because it went from one to another, but it's been a continuing saga. And not related to the appeal, but that is the frustration for everyone involved in this litigation, including the current district court judge that has gone on for so long. It is a result of the handoff between the judges in a very long period while both parties were waiting for rulings on a critical summary judgment motion. So, counsel, one other thing that gives me pause in your argument is you're equating claim with each sidewalk curb. And the way I would look at his claim that he actually did file was that the city was in violation of the ADA and California law because it had hundreds, in fact he uses the word, hundreds of sidewalk curbs and other violations of the ADA. That's his claim. Why are you, it seems that you're arguing that each sidewalk, like a count in a criminal complaint, you know, each sidewalk, each victim, each is a separate claim. I kind of see this as one claim. The claim is an inartful word used by us in that context. The word should be encounter. And, again, we're applying California substantive law for the Disabled Persons Act, which says under Donald v. Cafe Royale that you look at each encounter. And it is the specific encounter of the individual with that barrier that gives rise to the damages that he recovered here, as opposed to the injunctive side, where the plaintiff can, under non-circuit authority, seek a more expansive scope of relief for features he may not have personally directly encountered. But for damages, there's never been any ambiguity under California law. The plaintiff, this plaintiff, must personally and directly encounter that barrier to recover damages, and hence why it ties back into the governmental torts claim and why we can look at specific dates. Well, how does the California Tort Claim Act define claim? I don't know the answer to that, Your Honor. I, I, the presumption we're working under is that this is a claim under the governmental tort claim. I don't think that's disputed. And then what is the substantive law that the plaintiff must establish for that to be a claim? And working from that, we have Donald v. Cafe Royale, where California says, under the Disabled Persons Act, you must specifically encounter that barrier. That individual must encounter that barrier at a specific time. Well, at any time. It seems to me that how California defined, defines claim under its Tort Claim Act, which requires the notice, would be of some relevance here. I believe it has to do with the demand for damages, but it also inherently involves what the nature of the underlying claim is. And that's why we focused on what the nature of the underlying claim is. What is a claim under the Disabled Persons Act? What does California law say a claim under the Disabled Persons Act is? The California Tort Claims Act says a litigant must present any claim for money or damages that relates, quote, to a cause of action for death or injury to person or personal property. Apparently, the district court said, well, it's not really a cause of action for death or injury to person or personal property because it's a statutory claim or something like that. Is that what the reasoning was? The only analysis we have, and all the record tells us, is that the district court judge said that it was because it was a statutory damage that it was not subject to the California Tort Claims Act. Would you say it's an injury to person? Yes, I would say it's an injury to person. Okay. Do you want to reserve? Yes, Your Honor. Any time? Okay, great. Good morning, Your Honors. May it please the Court. My name is Terry Kilpatrick. I represent John Longberg, who is here in the courtroom today. There are two issues I would like to discuss today. One is that despite our disagreement whether or not the Government Claims Act applies in this kind of situation, Mr. Longberg did file a claim. And he identified that there were a lot of problems, that those problems were continuing. So that issue really is the issue. So you're saying you comply with the Tort Claims Act regardless of whether it applies or not? Yes, Your Honor. The second issue is that we would like to talk about is that the trial court did act within his discretion when he set the parameters of this case to include all claims  Well, I asked counsel for the appellant on this. You know, obviously this has been a very long and ongoing litigation. But, and it did have, the parameters were set by a pretrial order. But assume that a statute of limitations does exist, what's the safeguard against pretrial orders which in essence amend complaints being used to avoid the statute of limitations? Well, I don't know if anyone's avoiding the statute of limitations. I guess I would say there are two things. Well, I mean, basically what you're arguing is you're saying that it's a pretrial order, that's how this, that's how the, and we're reviewing it for abuse of discretion and would be asking us to look at the, you know, what they were put on notice of, the nature of the litigation, and it would just be ridiculous to keep filing these every six months, right? Correct. So you're saying it's not an abuse of discretion, the court can control that. But assuming there is a statute of limitations for certain things, what, you know, can a pretrial order be used to avoid it? No, I don't think so. And I think one of, perhaps one way we can guide that is under the Federal Rules of Civil Procedure, I would look at Rule 15C, which talks about how statute of limitations work for supplemental claims. And let's be clear, this wasn't an amended complaint issue. We didn't file an amended complaint. We didn't file a supplemental complaint. But borrowing from that issue, it really are supplemental claims arising out of the same facts and transactions. And under Rule 15C, all those do relate back for purposes of statute of limitations to the beginning of when the lawsuit was filed. I guess I'm still struggling with claim, whether you look at it under the substantive California State law or whether you look at it as what is a Federal claim. And it seems to me that the claim is that the city is in violation of the ADA. And then the damages that flow are each encounter, some statutory amount times each encounter. But your opposing counsel says, no, we have to look at the claim under the California State law. And for that, it's defined as each encounter. Now, it just occurred to me as I'm thinking this through out loud, the damages that were awarded, were they awarded based on the California violation of California law or violation of the ADA? Of California law. So it was of California law. Well, let me address your question about the claim, because as I understand it, and I don't have the definition here, but as I understand the Claims Act, the claims, the sheet of paper and the letter that we submitted saying that there's been some violations, we're requesting damages. And the issue really has to do with what is the injury, and is the injury the same or are they different facts and circumstances? And the injury or the encounter, they all arise out of the same facts and circumstances. And understand that what the factually what happened in this case is we're talking about programs that were built after 1992. And what the evidence is in the case is that between 1992 and the date he filed this lawsuit, Mr. Lomberg encountered all of these programs. And he said there had been hundreds of violations on hundreds of occasions and that they were continuing. He didn't file the lawsuit. He went back to these programs and took measurements of all the programs and said here's exactly what I'm talking about. I cannot use these without great risk of injury. So those are all related to the same facts and circumstances that arose before the lawsuit, that continued after the lawsuit. So when we're talking about this claim, I think that it is all the related transactions and occurrences that certainly how the Supreme Court and the appellate court cases have talked in the government claims context about when you, what claims are brought in here. And remember, too, that the Government Claims Act talks about when you filed the claim, that it needs to include facts known at the time of the claims filed. It doesn't require any, you know, future fortune-telling about what might be happening in the future. It's just assumed that there can be continuing violations. And the other that these claims are, they're related to a small part of the city's improper curb entries and things. Is that correct? That is correct. In other words, this is, the subset are the particular ones that Mr. Leinborg and Calderdon used sometime up to trial. Correct. Or tried to use, maybe couldn't. The city is saying, well, how do we know what ones he's going to be using between now and the time of trial? Do they have an argument that we can't really defend? We don't know where he's going to go. And it's really a separate claim each time he does it. Well, that's not what Mr. Leinborg is claiming here. Because remember, there's two things that happen. One is Mr. Leinborg encountered these curb ramps prior to trial. So, for example, I would refer you to the excerpts of record tab 12 of pages 131 to 142. And what he says there is, I have seen them building these curb ramps. I went up and down these streets before the lawsuit was filed. I walked with my counsel, me, we walked up and down the streets with Mr. Leinborg because I wanted to see what these curb ramps looked like, what he was talking about. He then went back after the lawsuit was filed and filled out survey sheets saying, you know, okay, here we go. These are all the problems. So these were things that happened before the lawsuit. They continued after the lawsuit. Moreover, in this case, just in terms of the equities of how do you manage a case that's been going on nearly 12 years, what the judge said is, look, I don't think it's fair to Mr. Leinborg to have to file a claim every six months. That doesn't make any sense to me. I don't even think the Tort Claims Act applies here. And I suppose there is sort of an equitable issue about how you deal with that. I mean, would you split the claims? Would you say, well, he can pursue injunctive relief claims because a lot of courts in the ADA context have talked about violations that are discovered after a lawsuit is filed. Well, we can't do that. We can't split a claim and say, well, you've got to pursue all of your injunctive relief now, but you've got to come back and refile a new lawsuit for your damages after the government maybe reviews your Tort Claim Act, file every six months. It's really unworkable, and he came up with a workable solution. Is this the end of it now, after we're done? Is this the end of this lawsuit? I mean, other than further appeals. But, I mean, has the district court done what they need to do at this point? No, Your Honor. There's one more issue. What this case is about was curb ramps built after the enactment of the ADA, after 1992, brand-new curb ramps. The next and final phase of the case has to do with curb ramps built before 1992. Okay. So they're not a part of this. Correct. Okay. The injunction that was sought in connection with these claims covered all other defective crossings in the city. Is that right? No. These were 189 curb ramps that Mr. Lomberg had personally encountered. Do I think there was a lot more than that? You bet. But what we talked about, these were curb ramps that he'd been to, he went and measured. And the injunctive relief applies only to these ones that he encountered? That's correct. Or is the injunctive relief much broader?  I'm not aware of that.   As far as the brief that's in the walk segments? There's a reference in the city's brief to the fact that it's probably the other injunction case or something that it has done much more to cure the problem since. I'm sorry. Would you rephrase that? I thought I read in the city's brief that, you know, they have completely redone all of their walk entries at great cost. Well, what they did do is they fixed all those 189 ramps. So the district judge said fix all these and they did. So it's these 189 for which damages have been awarded. That's right. Okay. And then we're going back on phase three about really the whole rest of the city and all these other places that Mr. Lombard travels. That's what makes me maybe ask Judge Callahan's question again. What about the ones he hasn't encountered? Are they still defective? Are they still defective? We don't know. Can you go out tomorrow and find some more? I believe so. At least as to injunction relief. I think that the courts, the cases have been pretty clear about that. But it makes no sense to require plaintiffs and courts and everybody else to come back and just keep revisiting issues. That if you encounter a barrier that you didn't know about before the lawsuit, you can certainly seek injunction relief for those. So if, for example, the city is out there building a program today that's inaccessible, I think Mr. Lombard would have the right to identify that and seek injunction relief. If they were building one today. But I'm just wondering about the ones that were built a long time ago that still haven't been fixed. And he hasn't been able to encounter every defective curb in the city, presumably. So there must be ones remaining. Well, this really gets sort of into phase three. But you're right. And the issue will be does he only have injunction relief as to those curb ramps he encountered, or that he is likely to encounter. And we're going to argue this is his home, and he goes all over the city, always has. And we'll be arguing that there should be a citywide injunction to look at and repair all those curb ramps. And whether the time they were built, and if they were built in 1950 and Mr. Lombard encountered it for the first time tomorrow, I think for purposes of injunction relief he's entitled to have them all addressed in a single case. The ones that were built before the ADA was enacted, under the ADA, are they grandfathered in? No. And to be clear, this part of the case is all about after the ADA was enacted. I know our part. Right. The third part, the answer is no. There's regulations that state that you need to figure out if your program is accessible. And a program is a sidewalk, as this Ninth Circuit has held. And if there needs to be any physical changes, they need to make the changes to the facilities. So what they need to do is go out and figure out how their sidewalks are accessible and what physical changes need to be done to fix that. And under the regulations, all that was supposed to have been done by 1995. Well, now, if I were just a betting person, the city probably has a little different interpretation of this than you do, right? I believe they do. So you would just stay in your interpretation. So, but this is all still going, that's still in the district court, regardless of how. That's correct. That's our position that we'll be advocating in Phase 3 of the trial. All right. Let me address two, well, I've addressed one of these. Let me address the other issue that we talked about and Your Honor, Justice Callahan had mentioned. And that is, you know, that it's a little incredulous for the city to be claiming that this came as a complete surprise. The way this came up was a motion in Lemonade by the city months before the pretrial conference saying we want to cut Mr. Lombard's damages off. And they made all those claims about statute of limitations and the Government Claims Act. And we went through that. There was actually several rounds of briefing on that before the judge entered his order at the pretrial conference. The second issue is we identified all those as continuing in the complaints. So, again, it should have been no surprise to the city what this case is about. And third, I didn't attach it as an appendix in this case. I didn't think I really didn't want to burden you. But the discovery in this case, which has been going on also for 10 years, I mean, it's a foot high, identifying every single curb ramp, every feature of that curb ramp. The damages that we're talking about, they deposed Mr. Lombard several times. Right up until 2007, the judge reopened discovery to say, look, I want you to have a fair shot at this. So they had all the evidence throughout this case. They had it before the case. The judge gave them another opportunity at the end of the case. It is just not true that this came as a big surprise. And as I quoted from the trial attorney in the case, he wasn't claiming that. He wasn't claiming it was a notice issue. They were claiming statute limitations and some other issues. So I guess to summarize, we believe that Mr. Lombard fulfilled the purpose of the Claims Act, which is to provide the city with notice of his claims. And the district judge acted within his discretion, and he looked at all the evidence and weighed the facts and decided to encompass all claims between the year before the lawsuit up through the date of trial. All right. Thank you, counsel. Thank you. Mr. Hurley, you have a few minutes. Yes. Thank you, Your Honor. What I heard listening to Plaintiff Capelli's position is that there is no limitation on Mr. Lombard's damage claims other than being limited to not being able to file a claim more than one year before the complaint. Everything else he conceived damage is for. There's no statute of limitations limitation. There's no tort claim obligation. And I find it hard to believe that that is actually the law. And it certainly has not been the law when California courts have applied the statute. So what's your – I'm just very curious. What's your – what's the city's position in the third phase in response to my question as to the pre-ADA Act sidewalks? The third phase gets – and this is completely apart from any issue we have here. Right. I understand that. I'm just curious. The third phase now we don't believe exists. And the reason why is this Court found that there is no private right of action for a self-evaluation transition plan under the ADA. The self-evaluation transition plan is the only remedy available to an individual who's challenging pre-1992 defects in the city's facilities. That's all that Congress and the Department of Justice created. That's the only obligation that exists for a public entity for pre-ADA configurations. There is no other body of law the plaintiffs can point to. There are no other regulations. So without the self-evaluation transition plan, we don't believe that there are additional claims. There may be additional claims, and the plaintiff claims that there are additional claims for damages, again, unrestricted by the Tort Claims Act and unrestricted by the statute of limitations. I wanted to follow up on the Court's question as damages under the ADA. The ADA only allows injunctive relief. All of the damages sought in this case and awarded in this case were under Disabled Persons Act, Civil Code Section 54. We have the Donnell case there that says that to recover damages under Civil Code Section 54, you must have a personal encounter on a specific instance. You have the Pickering cases there, which say that the statute of limitations runs from the date of encounter. And then we cite the New Peroni case, which looks at this exact situation with claims under Civil Code Section 54 and says, no, the governmental tort code claim does apply to those claims for damages. Finally, I want to address the issue that goes back and forth here about fairness. Plaintiffs could have, at any time prior to the eve of trial, after the close of discovery, supplemented their complaint. They waited 10 years to do so. If it is your opposing counsel correct that you had discovery as to all of the alleged defective curbs that were built after 1992? Again, let's distinguish between what we thought the case was about, which is a handful of incidences covered by a governmental claim as we went into our pretrial conference. That's what we understood the damage portion was about. We understood the injunctive portion to be much larger. But we had this bomb dropped on us at the pretrial conference, which is up to the date of trial, even past discovery, you can now submit claims for damages. Right. But you knew of the defective sidewalks that he was he had encountered. We knew he was seeking injunctive relief for. Well, you knew that from the other lawsuit, didn't you? Which one? The one that where these parties were back in front of me last time and dealing with the transition plan and all of that. That's those claims are limited to injunctive relief. Again, we knew the scope of injunctive relief here was very broad. But why does that? See, that's what I'm wrestling with. If you knew that you knew that these 189 curbs were defective and he was seeking injunctive relief, then you knew they were defective and he would be entitled to damages, too. If he had you did not know that he encountered them? Is that what you're saying? Yes. And, again, taking a step too far back, and let me know if I'm going too far back, this body of California law predates the ADA. Civil Code Section 54 and the Under Civil Rights Act existed many years before the ADA, and there was this cause of action for damages. There's a well-developed body of law on what encountering is, encountering and when you can get damages. And the ADA, all that changed was that California said if you can identify a violation of the ADA and show all the requirements that you must show under the Disabled Persons Act for encountering the statute of limitations, then you can get damages for those. So as we went into this case, we knew that his claims for injunctive relief under the ADA were very broad, but we believed that his claims on damages were limited to his governmental code claims and the limitations that are built into State law under cases like Donald Pickering and Perroni for statute of limitations, for claim presentation requirements. So this came as a complete surprise to us. And the distinction, this Court has drawn a distinction between when a plaintiff can seek injunctive relief under the ADA and when a plaintiff can get damages. For injunctive relief you can't claim entirely that he wasn't seeking damages because under the tort claims you were on notice that he was seeking damages, just not for as many. But then under the injunctive relief, you knew all the sidewalks that had problems. Correct, Your Honor. We knew he filed a governmental code claim, so we knew for the six months prior to that he would be seeking damages for specific encounters that he had. We also knew that that would be limited by the statute of limitations and the case law. All right. Thank you, Counselor. Thank you, Your Honor. This case, Von Berg v. Riverside, will be submitted and the Court will be in recess for five minutes. All rise. This Court is in recess.
judges: Canby, Wardlaw, Callahan